# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 07-CV-5030 (JFB) (ETB)

DANIEL PELOSI,

Plaintiff,

VERSUS

THOMAS J. SPOTA, III, individually and in his official capacity as District Attorney and
JANET ALBERTSON, individually and in her official capacity as Assistant District Attorney,

Defendants.

**MEMORANDUM AND ORDER**
March 10, 2009

JOSEPH F. BIANCO, District Judge:

Plaintiff *pro se* Daniel Pelosi ("Pelosi" or "plaintiff") brings this action against Thomas J. Spota, III ("Spota"), District Attorney for the County of Suffolk and Janet Albertson ("Albertson"), Assistant District Attorney for the County of Suffolk (together, "defendants"), pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that defendants violated his constitutional rights under the First and Fourteenth Amendments in connection with his criminal proceedings by improperly obtaining and utilizing a medical record during cross-examination of plaintiff during the criminal trial. Specifically, plaintiff argues that defendants improperly obtained a written psychiatric evaluation of plaintiff, that was marked as a court exhibit during the course of a Workman's Compensation trial approximately ten years earlier, and then used it during questioning in the criminal trial. Plaintiff seeks an order declaring that defendants acted in violation of his constitutional rights under the First and Fourteenth Amendments, an award of compensatory damages in the amount of $150,000,000, and attorney's fees, as well as the costs of the instant action.

Defendants now move for dismissal of the complaint in its entirety, pursuant to Fed. R. Civ. P. 12(c).[1] Plaintiff did not submit any

---

[1] Although framed as a motion for judgment on the pleadings under Rule 12(c), the Court will treat the motion as one under Rule 12(b)(6) and analyze the motion under that standard, since no answer has been filed. In any event, in reviewing a Rule 12(c) motion to dismiss, the Court "'appl[ies] the same standard as that applicable to a motion under Rule 12(b)(6), accepting the

opposition to the motion. However, the Court has still analyzed the merits of the motion and addressed the strongest arguments that could potentially be made in opposition to the motion. For the reasons set forth below, defendant's motion is granted. The critical issue is whether plaintiff had a constitutional right to privacy in a psychiatric medical report obtained and used by prosecutors during cross-examination of plaintiff at his 2004 criminal trial for Murder in the Second Degree. The answer is no. Specifically, because it is undisputed, based on plaintiff's complaint, that the medical report at issue was marked as a court exhibit at the plaintiff's 1995 Workman's Compensation trial in state court and was therefore part of the public record, plaintiff had no constitutional right to privacy in that record. Accordingly, plaintiff's Section 1983 claims must be dismissed as a matter of law.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint ("Compl."), as well as exhibits attached to plaintiff's complaint, which include judicial records of which the Court may take judicial notice.[2] The Court assumes the allegations in the complaint to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

On April 24, 1995, after a jury verdict on the issue of damages, a judgment was entered by the Supreme Court of the State of New York, County of Suffolk, in connection with a Workman's Compensation claim brought by plaintiff against defendant insurance carriers. In the action, plaintiff alleged pain and suffering, as well as resultant substance abuse, from a fall at a construction site. During the pendency of the civil action, plaintiff, accompanied by counsel, presented himself to a psychiatrist, Dr. Michael L. Melamed, who was selected by defendants to conduct an examination of plaintiff and issue an expert report.[3] During the trial of the civil action,

---

allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).

[2] In an affirmation submitted with the motion to dismiss, in addition to re-submitting documents already annexed to plaintiff's complaint, defendants also have supplied more pages of court transcripts from the 2005 criminal case, of which the Court may take judicial notice. However, although these additional pages of the transcript provide helpful context, the lack of any cognizable claim is apparent from the plaintiff's complaint and documents annexed thereto.

[3] A brief summary of plaintiff's claims is contained in the Appellate Division, Second Department's decision upholding the jury verdict finding that plaintiff had suffered a back injury from the fall, but awarding no damages. *See Pelosi v. TJA Main. Programming*, 247 A.D.2d 453, 454 (N.Y. App. Div. 1998) ("The plaintiff Daniel Pelosi alleges that his back was injured when he fell through an acoustical tile ceiling while working at a construction site, and that the pain from his back injury caused him to abuse drugs and alcohol for many years after the accident."). It is clear from the Appellate Division decision that plaintiff put his mental condition at issue in that case, which led to the psychiatric examination and testimony by Dr. Melamed. *See id.* at 454-55 ("the defendants' experts explained that there were several reliable indications that Pelosi was malingering or exaggerating his injuries. The evidence was similarly convincing that Pelosi's addictions were not made worse by

2

Dr. Melamed testified and his report was marked as a court exhibit, with the later specification by the trial judge that it not be presented to the jury.[4] (Compl., Ex. A.) On March 24, 2004, plaintiff was indicted and charged, in connection with the death of Theodore Amman, with Murder in the Second Degree in Suffolk County Criminal Court. According to the complaint, which annexed notes from a Suffolk County Detective's log book, Assistant District Attorney Janet Albertson obtained the Melamed report as a result of a meeting with the civil attorney from the 1995 Workman's Compensation case.[5] (Compl., Ex. D.) The information contained in the Melamed report was used for a portion of Assistant District Attorney Alberton's cross-examination of plaintiff in his criminal trial for Murder in the Second Degree. (Compl., Ex. C.) Plaintiff was convicted of this charge by a jury verdict returned on December 13, 2004.

### B. Procedural History

Plaintiff filed the instant action on December 3, 2007. On May 9, 2008, defendants filed a motion for dismissal pursuant to Fed. R. Civ. P. 12(c). After receiving two extensions of time to file his opposition papers, plaintiff was to submit his response to the motion by December 1, 2008, but failed to do so. However, as noted above, despite the lack of any opposition to the motion, the Court has nevertheless analyzed the merits of the motion and raised the strongest possible arguments plaintiff could have made in opposition to the motion.[6]

### II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.

---

the accident.").

[4] Specifically, the trial court stated to the attorneys, in reference to the report: "[G]entleman, just for purposes of a record, you provide me with a copy which I'll mark as a Court Exhibit, not to be presented to the jury, but should anything go up from this case, the Appellate Court would have the report before it so it would see what rulings have been made." (*See* Compl., Ex. A, at 1551.)

[5] Defendants also have submitted an affirmation which states that, based upon notes annexed to the affidavit, that during the investigation into the death of Amman, Albertson and the lead detective on the case received information from an attorney, Donald Deegan, who had been involved in the aforementioned Workman's Compensation civil action. (Dunne Aff. ¶ 10; Ex. G.) According to the affirmation, on December 4, 2003, Albertson and the detective visited Deegan at his office, wherein they obtained a copy of the psychiatric report of plaintiff that was conducted by Dr. Melamed and marked as an exhibit in the civil proceedings. (*Id*.) The affirmation essentially mirrors the allegations in the complaint and the notes annexed thereto. Under the motion to dismiss standard, the Court has not considered any information in defendant's submissions that go beyond the allegations in plaintiff's complaint and the documents annexed thereto. In any event, this information regarding how the prosecution team obtained the record is not critical to the instant motion because, as noted *infra*, the report was a public document and, thus, cannot be the basis for a violation of plaintiff's constitutional right to privacy.

[6] "A plaintiff's failure to oppose a motion to dismiss does not, by itself, justify dismissal." *Rawlins v. M & T Mortg. Corps.*, No. 05 Civ. 2572 (RCC), 2005 U.S. Dist. LEXIS 19143, at *3 n.2 (S.D.N.Y. Sept. 1, 2005) (citing *Maggette v. Dalsheim*, 709 F.2d. 800, 802 (2d Cir. 1983)).

3

*See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007). A claim that is not plausible on its face must be "supported by an allegation of some subsidiary facts to survive a motion to dismiss." *Benzman v. Whitman*, 523 F.3d 119, 129 (2d Cir. 2008). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant*, "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally . . . . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings . . . . This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." 537 F.3d 185, 191 (2d Cir. 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se*, the Court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'") (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (alterations in original)); *accord Sharpe v. Conole*, 386 F.3d 483, 484 (2d Cir. 2004).

In connection with a motion to dismiss under Rule 12(b)(6), the Court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis*, 421 F.3d at 100; *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). The Court may only consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphases in original)). Courts also "'routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings.'" *Crews v. County of Nassau*, No. 06 Civ. 2610 (JFB), 2007 U.S. Dist. LEXIS 6572, at *5 n.2 (E.D.N.Y. Jan. 30, 2007) (quoting *Kramer*, 937 F.2d at 774); *see also Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9 (E.D.N.Y. May 13, 2005) (court could consider "public documents of which the plaintiff has notice" on a Rule 12(b)(6) motion to dismiss). Thus, in the instant case, the Court can consider all of the documents attached to plaintiff's complaint, including the psychiatric evaluation and the relevant portion of the transcript of the 1995 Workman's Compensation trial in state court. In any event, the Court can take judicial notice of the transcript and exhibits from these state proceedings. *See Global Network Comm'cns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("'A court may take judicial

notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *see also Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (noting that a court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.") (internal quotation and citation omitted); *Dutton v. Swissport USA, Inc.*, No. 04 Civ. 3417 (RJD) (LB), 2005 WL 1593969, at *1 (E.D.N.Y. July 1, 2005) (taking judicial notice of transcript from a Worker's Compensation Board hearing).

III. DISCUSSION

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Here, pursuant to Section 1983, plaintiff claims that his rights under the First and Fourteenth Amendments to the Constitution were violated when defendants, acting under the color of state law, referenced a psychiatric evaluation conducted in a previous civil action during his criminal proceedings. Specifically, plaintiff argues that defendants' use of the psychiatric report during his criminal proceedings was improper because he never waived any right to shield its contents from public examination, either during the civil proceedings or at any time thereafter. The critical question before this Court is whether the defendants in the instant action wrongfully obtained the document for use in plaintiff's criminal trial in violation of plaintiff's right to privacy as protected by the due process clause of the Fourteenth Amendment to the Constitution. As discussed below, the Court finds that they did not. The report at issue was marked as an exhibit at the 1995 civil trial and thereby became a part of the public record. Under such circumstances, plaintiff has no cognizable right to privacy which protects such information. Therefore, his Section 1983 claim that defendants violated his right to privacy under the Fourteenth Amendment must fail as a matter of law.

A. Legal Standard

The Supreme Court has held "that there exists in the United States Constitution a right to privacy protecting 'the individual interest in avoiding disclosure of personal matters.'" *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).[7] Based upon this Supreme Court jurisprudence, the Second Circuit has

---

[7] Though plaintiff claims that defendants' actions violated his right to privacy as protected by both the First and Fourteenth Amendments to the Constitution, "the [Supreme] Court [has] expressed the opinion that the 'right of privacy' is founded in the Fourteenth Amendment's concept of personal liberty." *Whalen v. Roe*, 429 U.S. 589, 600 (1977) (citation omitted). The First Amendment, conversely, though protective of an individual's right to association, does not protect an individual's right to "anonymity in the course of medical treatment," *Whalen*, 429 U.S. at 604 n.32, and even if it did, any such right would not be implicated by the instant action, for reasons stated *infra*.

5

recognized that this constitutional right to privacy protects against disclosure of personal medical information. *See, e.g., Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) ("We therefore hold that [plaintiff] possesses a constitutional right to confidentiality under *Whalen* in his HIV status."); *accord Doe v. Marsh*, 105 F.3d 106, 110 (2d Cir. 1997); *Schachter v. Whalen*, 581 F.2d 35, 37 (2d Cir. 1978). The Second Circuit also has made clear that this constitutional right extends to prisoners. *See, e.g., Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) ("the gratuitous disclosure of an inmate's confidential medical information as humor or gossip – the apparent circumstance of the disclosure in this case – is *not* reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy.") (footnote omitted) (emphasis in original).

It is well-settled, however, that any constitutional right to privacy does not extend to matters of public record. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) (stating that "even the prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the information involved already appears on the public record"); *see Connick v. Myers*, 461 U.S. 138, 143 n.5 (1983) (citing *Cox* for the proposition that an "action for invasion of privacy cannot be maintained when the subject-matter of the publicity is matter of public record."); *Doe v. City of New York*, 15 F.3d 264, 268 (2d Cir. 1994) ("Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record."); *see also Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (holding that "there is no constitutional right to privacy in one's criminal record" because "arrest and conviction information are matters of public record"); *Rush v. Artuz*, 00 Civ. 3436 (LMM), 2004 WL 1770064, at *11 (S.D.N.Y. Aug. 6, 2004) ("prisoners cannot expect their constitutional right to privacy to protect them against the disclosure of medical information that had already previously been disclosed to the public") (collecting cases).

With respect to trials, the Supreme Court has noted that, as a trial is a public event, "'[w]hat transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. And we can see no difference though the conduct of the attorneys, of the jury, or even of the judge himself, may have reflected on the court. Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.'" *Cox*, 420 U.S. at 492-93 (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)); *see Nixon v. Warner Comm'cns*, 435 U.S. 589, 597 (1978) (events which transpire in open court are a matter of public record); *In re Application of Nat'l Broadcasting Co. v. United States*, 635 F.2d 945, 949 (2d Cir. 1980) (public has the right to inspect and copy judicial records). Though *Cox* and its progeny generally addressed press access to, and publication of, judicial records, the reasoning of those decisions is clear that no right to privacy attaches to those records, regardless of whether they are obtained by a member of the press or the general public.

Accordingly, "there [i]s a 'strong presumption' in favor of allowing the public to inspect and copy 'any item entered into evidence at a public session of a trial.'"

*United States v. Graham*, 257 F.3d 143, 149 (2d Cir. 2001) (quoting *In re Application of Nat'l Broadcasting Co. v. Myers*, 635 F.2d 945, 952 (2d Cir. 1980)); *accord United States v. Basciano*, No. 03 Cr. 929 (NGG), 2007 WL 1827330, at *1 (E.D.N.Y. June 25, 2007). Further, federal courts have held that "all materials that are the subject of an evidentiary ruling by the court, whether or not found admissible, are part of the record for purposes of the public's right to inspect and copy." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866, 899 (C.D. Pa. 1981); *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982), *cert. denied*, 460 U.S. 1051 (1983) (ruling that documents considered during the "adjudication stage" of a lawsuit "should, absent exceptional circumstances, be subject to public scrutiny.").[8]

### B. Application

In the instant action, the psychiatric report at issue was discussed and marked as a court exhibit in the plaintiff's 1995 Workman's Compensation trial in the Supreme Court of the State of New York, County of Suffolk. In particular, the trial court, during the discussion of evidentiary issues relating to the Melamed report and his rulings regarding the parameters of questioning of Dr. Melamed regarding such issues, made the report a court exhibit so that it would be part of the record on appeal:

> THE COURT: [M]ay I suggest, gentlemen, just for purposes of a record, you provide me with a copy which I'll mark as a Court Exhibit, not to be presented to the jury, but should anything go up from this case, the Appellate Court would have the report before it so it would see what rulings have been made.

(Compl., Ex. A, at 1551.). After neither side objected to that, the trial court stated:

> THE COURT: I'll mark it as Court Exhibit 1. I instruct the Court Clerk that it's not to be given to the jury.
>
> THE COURT CLERK: Mark it now, Judge?
>
> THE COURT: Please.
>
> (Whereupon, the Report of Dr. Melamed, date of examination 3-10-95, was marked as Court's Exhibit 1.)
>
> THE COURT CLERK: So marked, Judge.

---

[8] Although the Court focuses on federal constitutional law for purposes of plaintiff's Section 1983 claim, the Court notes that New York law on the public nature of judicial records is identical. *See Danco Laboratories v. Chem. Works of Gedeon Richter*, 274 A.D.2d 1, 7 (N.Y. App. Div. 2000) ("In New York, too, we have stated that "statutory and common law . . . have long recognized that civil actions and proceedings should be open to the public in order to ensure that they are conducted efficiently, honestly, and fairly. New York's presumption of public access is broad.") (quotations and citations omitted); *see also Doe v. New York Univ.*, 6 Misc.3d 866, 874 (N.Y. Sup. Ct. 2004) ("all documents and records filed with the court are 'court records,' and presumptively, open to the public") (citing 22 N.Y. Comp. Codes R. & Regs. § 216.1).

(*Id*. at 1551-52.) Therefore, it is clear from the 1995 transcript that the Melamed report, although it was not to be given to the jury, was made a court exhibit during the 1995 trial and, thus, was part of the public record.[9]

Plaintiff concedes all of these pertinent facts in his complaint. However, if plaintiff had filed an opposition to the motion, he might try to argue that the fact that it was only a court exhibit (rather than a trial exhibit given to the jury) means that it was not part of the public record. As discussed below, the Court finds that argument unavailing under the allegations of this case.

First, court filings or exhibits that are "relevant to the performance of the judicial function and useful in the judicial process" are judicial documents to which the common law presumption of public access attaches. *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995); *In re Agent Orange Products Liab. Litig.*, 96 F.R.D. 582, 584 (E.D.N.Y. 1983) (noting that filed documents, court exhibits, or trial proceedings are all public records); *see also Smith v. United States District Court for the Southern District of Illinois*, 956 F.2d 647, 650 (7th Cir. 1992) ("Courts have also held that judicial records include transcripts of proceedings, everything in the record, including items not admitted into evidence.") (citation omitted); *United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984) ("The common law right of access is not limited to evidence, but rather encompasses all judicial records and documents . . . .") (citation and quotations omitted); *In re Application of CBS, Inc.*, 540 F. Supp. 769, 771 n.3 (N.D. Ill. 1982) ("Nor is the Court persuaded that the tapes sought are not 'judicial records' because they were not technically admitted in evidence in the course of a trial. The Court believes that the policy behind the common law presumption of access is that what transpires in the courtroom is public property.").

Thus, courts have routinely held that all exhibits, including those exhibits which the court rules inadmissible or are not admitted for some other reason, are part of the public record. *See, e.g., United States v. Graham*, 257 F.3d 143, 153 (2d Cir. 2001) ("Because we find that the question whether the tapes at issue are judicial documents within the meaning of the common law privilege identified in *Warner Communications* does not turn on whether they were formally admitted as evidence, we must return to the more general question whether they are relevant to the performance of the judicial function and useful in the judicial process. We find that they are. As mentioned above, although there is some confusion regarding whether the district court considered the tapes to be formally entered into evidence, there can be no doubt that the tapes were instrumental in its decision to detain the defendants . . . .

---

[9] Although plaintiff suggests in his complaint that the court decided that the report would not be shown to the jury due to his right to privacy, the record does not support that contention. Instead, the portions of the transcript from the 1995 trial relating to the report, which plaintiff annexed to his complaint as Exhibit A, demonstrate that the Court's focus in not allowing the jury to see the document was based upon hearsay concerns – namely, the report summarized statements and conclusions by doctors other than Dr. Melamed. (Compl., Ex. A, at 1529-33.) In fact, plaintiff's counsel made a specific hearsay objection. (*See id*. at 1529 (citing case and noting that "it says that the medical reports are hearsay they should not go into evidence").) Following that discussion, the Court made rulings regarding the scope of Dr. Melamed's testimony and determined that the report, although part of the record as a court exhibit, would not be given to the jury.

8

We therefore conclude that the tapes are 'judicial documents' for the purposes of the common law right.") (citing *Nixon v. Warner Comm'cns, Inc.*, 435 U.S. 589 (1979) (other citations and quotations omitted)); *see also Zenith Radio Corp.*, 529 F. Supp. at 899 (stating that "all materials that are the subject of an evidentiary ruling by the court, whether or not found admissible, are part of the record for purposes of the public's right to inspect and copy"); *In re Peregrine Sys.*, 311 B.R. 679, 687-88 (D. Del. 2004) (same); *Joint Stock Soc'y, v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 402-03 (D. Del. 2000) (same); *Republic of Philippines v. Westinghouse Electric Corp.*, 139 F.R.D. 50, 58 (D.N.J. 1991) (same).

In the instant case, the trial court in the 1995 state court proceeding was clearly considering the Melamed report in connection with evidentiary rulings that the court was making and made the report a court exhibit so that it would be part of the record on appeal. Therefore, there is no question that the report was relevant "to the performance of the judicial function and useful in the judicial process," and, thus, was a judicial document subject to the right of public access.[10]

---

[10] In his complaint, plaintiff directs the Court's attention to the decision in *Schwenk v. Kavanaugh*, 4 F. Supp. 2d 110 (N.D.N.Y. 1998), wherein the district court found, after a bench trial on the merits, that defendant county attorneys had violated plaintiff's right to privacy under the Fourteenth Amendment as well as various New York state statutes when they improperly subpoenaed his medical records for use in his criminal trial. However, the plaintiff in that case never affirmatively placed his mental condition at issue in those proceedings and never waived any privilege associated with those records. Moreover, those records were never made court exhibits at an earlier trial, thereby becoming a part

*Amodeo*, 44 F.3d at 145; *accord Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

Second, although the Court recognizes that the right to court records is not absolute, *see Warner Comm'cns, Inc.*, 435 U.S. at 589, plaintiff did nothing to attempt to shield this report, which was marked as a court exhibit in the 1995 civil trial, from inspection by the public. Of course, there are mechanisms both in the trial court and appellate courts for seeking to have such exhibits placed under seal, if the applicable standard is met. *See In re Application of Nat'l Broad. Co.*, 635 F.2d at 952 n.4 ("If, for justifiable reasons, a particular item were entered into evidence under seal, the presumption [of public access] would obviously not apply, because, with respect to that item of evidence, the session of court was not public."); *Lugosh,* 435 F.3d at 120 ("[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.") (quotations and citations omitted); *see also People v. Mateo*, 184 Misc.2d 704, 704 (N.Y. Sup. Ct. 2000) (sealing records for appellate review). However, neither plaintiff nor his counsel took any steps to protect this medical information during the course of the 1995 trial. Plaintiff did not object to the trial court making the report part of the record as a court exhibit and did not request that the document be placed under seal even though the court specifically noted that it was making it an exhibit so that it could part of the record on appeal, which would clearly be public.

---

of the public record, before their use by the defendants. Therefore, the ruling in *Schwenk* is inapplicable to the instant case.

Third, not only did neither plaintiff nor his counsel ever attempt to shield this judicial record from public disclosure by not having it marked as a court exhibit or sealing the exhibit, but the report was discussed in open court as the evidentiary issues were explored and as Dr. Melamed testified at the trial. In other words, plaintiff's complaint and attached documents make clear that: (1) plaintiff injected the issue of his mental condition into the 1995 civil case by claiming his fall caused him to abuse drugs and alcohol after the accident; (2) plaintiff made no objection to the court making the psychiatric report part of the public record as a court exhibit; (3) plaintiff allowed the report to be discussed in open court; and (4) Dr. Melamed testified regarding plaintiff's mental condition during the trial. Under such circumstances, there is no question that the report is a public record from the 1995 proceeding and plaintiff cannot claim a constitutional right to privacy in such document.[11] *See, e.g., Marsh*, 105 F.3d at 111 ("[O]ur decision in *Doe v. City of New York* indicates that a plaintiff with HIV may have waived his right to privacy by entering in to a settlement agreement that he knew would become a matter of public record . . . ."); *see also McNally v. Pulitzer Publ'g Co.*, 532 F.2d 69, 77 (8th Cir. 1976) (affirming dismissal of constitutional right to privacy claim in connection with newspaper's publication of portions of confidential psychiatric report, which were not read in open court, because "facts indicate that substantial information regarding [plaintiff's] mental competency was a matter of public record"); *Doe v. Lockwood*, No. 95-3499, 1996 WL 367046, at *4 (6th Cir. June 27, 1996) ("We do not believe that an individual can claim constitutional protection in the privacy of information that he or she has intentionally revealed, without coercion by the state, to the public. More specifically, where an individual reveals private information in a

---

[11] Moreover, to the extent that plaintiff might claim that such document should not have been public because of doctor-patient privileged information, any such privilege was waived in the 1995 civil lawsuit. The law is clear that the holder of a privilege may waive that privilege when he takes "affirmative steps to inject privileged materials into the litigation." *In re Grand Jury*, 219 F.3d 175, 187 (2d Cir. 2000); *see In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) ("[F]airness considerations arise when the party attempts to use the privilege both as a shield and a sword.") (internal quotation and citations omitted). Thus, when a litigant seeks relief for alleged damages related to his mental health, he may waive the doctor-patient privilege attached to mental health evaluations which are implicated by his claim. *See, e.g., Cohen v. City of New York*, Nos. 05-CV-6780, 05-CV-7026, 05-CV-8453 (KMK) (JCF), 2007 WL 2789272, at *4 (S.D.N.Y. Sept. 25, 2007). The Second Circuit recently adopted a narrow interpretation of this waiver, ruling that a claimant does not waive the privilege simply by requesting damages for pain and suffering, but rather must affirmatively plead claims of mental or psychological injury and seek damages based upon those claims. *See Sims*, 534 F.3d at 120; *In re Consolidated RNC Cases*, 2009 WL 130178, at *6 (S.D.N.Y. Jan. 8, 2009); *Kunstler v. City of N.Y.*, 242 F.R.D. 261, 264 (S.D.N.Y. 2007) ("[A] party does not put his or her emotional condition in issue by merely seeking incidental, 'garden variety,' emotional distress damages.") (internal citation and quotations omitted); *see also Brown v. Kelly*, No. 05 Civ. 5442 (SAS), 2007 WL 1138877, at *2, n.10 (S.D.N.Y. Apr. 16, 2007) (same). Here, plaintiff affirmatively placed his mental condition at issue in the Workman's Compensation proceeding when he sought damages specifically related to drug and alcohol abuse allegedly caused by his accident; accordingly, he waived any privilege attached to psychiatric evaluations implicated by his claim. *See, e.g.,United States v. Sattar*, 471 F. Supp. 2d 380, 388 (S.D.N.Y. 2006) ("There is no basis for a selective appeal to privacy on the same subject matter.") (citations omitted).

courtroom, the information is no longer either objectively or subjectively 'private.'"); *Williams v. Baker*, 464 F. Supp. 2d 46, 49-50 (D. Me. 2006) (Section 1983 claim against state revenue service employee – for allegedly violating plaintiff's constitutional right to privacy by disclosing financial information about the estate of plaintiff's mother – was "fatally flawed, because the information allegedly disclosed was previously a matter of public record").

In sum, it is clear from plaintiff's complaint that the Melamed Report, which was a court exhibit in the 1995 trial, was a judicial record subject to public inspection. As a public record, no constitutional right of privacy can attach to the subsequent possession, use, or dissemination of information contained in that document. The allegation that the defendants obtained the report from a third party, rather than the state court files, is of no constitutional significance. *See Lockwood*, 1996 WL 367046, at *5 ("Under the facts as stated in the complaint, John Doe cannot claim that state actors who disseminate the same information to the public that he disclosed in open court have violated his asserted federal constitutional right to informational privacy. We believe this is true even if the state actors' source of the private information was not the court proceedings because the information is no longer 'private' in the sense that the public is unaware of the information."). Because the report at issue is a public record, no cause of action can exist under Section 1983 in connection with the document, for an alleged violation of a constitutional right to privacy by using that information in the criminal prosecution, regardless of how it was obtained. In short, plaintiff had no reasonable expectation of privacy related to the medical report (as a public record) and defendants' use of it during his criminal trial did not violate any constitutional right to privacy. Therefore, plaintiff's Section 1983 claim must fail as a matter of law.

IV. CONCLUSION

For the reasons stated above, defendant's motion to dismiss the complaint is granted in its entirety. The Clerk of the Court shall enter judgment accordingly and close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, thus, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 10, 2009
Central Islip, NY

\* \* \*

Plaintiff is representing himself *pro se*: Daniel Pelosi, Greenhaven Correctional Facility, P.O. Box 4000, Route 216, Stormville, New York, 12582. The attorney for defendants is Richard T. Dunne, Esq., Suffolk County Department of Law, H. Lee Dennison Building, 100 Veterans Memorial Highway, Hauppauge, New York, 11788.